UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE SPILLER,

        Plaintiff,                                  Hon. Janet T. Neff

v.                                                    Case No. 1:19-cv-533

JEFFREY STIEVE, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

The Court has before it the Motion for Judgment on the Pleadings and in the Alternative Motion for Summary Judgment of Defendants Corizon Health, Inc., Keith Papendick, M.D., Robert Lacy, D.O., Jeffrey Bomber D.O., and Penny Rogers, N.P. (the Corizon Defendants) (ECF No. 41) and the Motion for Summary Judgment of Defendants James Blessman and Carmen McIntyre (ECF No. 42).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **GRANTED**.

### I.  Background

Plaintiff, a former state prisoner incarcerated with the Michigan Department of Corrections (MDOC) until March 12, 2019, filed his complaint in this case on July 3, 2019, alleging that Defendants violated his rights under the Eighth Amendment by denying him surgery for his shoulder.   Plaintiff also alleges a separate count against Corizon for liability pursuant to *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

In April 2010, Plaintiff hurt his right shoulder while incarcerated with the MDOC at Ryan Correctional Facility.   (ECF No. 52-1 at PageID.404, 406.)   The initial treatment plan called for

ice, followed by warm compresses and over-the-counter pain medication. Plaintiff was scheduled for a follow-up appointment with a medical provider. (*Id.* at PageID.404–05.) Plaintiff was given Tylenol for his shoulder pain over the next several years. (*Id.* at PageID.410.) Plaintiff was eventually transferred to Kinross Correctional Facility (KCF) in December 2012. (*Id.* at PageID.412.)

Plaintiff's shoulder pain continued to worsen through 2014. While at KCF, he received two cortisone injections for his pain. In July 2014, Defendant Rogers ordered x-rays and an MRI of Plaintiff's shoulder. She also referred Plaintiff to physical therapy because the doctors in Lansing wanted him to try physical therapy before referring him for a surgical evaluation. (*Id.* at PageID.412–13.) Because the physical therapy exercises did not alleviate Plaintiff's pain, Rogers referred Plaintiff to Dr. Ganzhorn for an orthopedic consult at War Memorial Hospital (WMH) in Sault Ste. Marie, Michigan. (*Id.* at PageID.414; ECF No. 52-4 at PageID.703-04.) Plaintiff saw Dr. Ganzhorn on February 17, 2015. (ECF No. 58-1 at PageID.1218.) Dr. Ganzhorn recommended an arthroscopy with a Neer-mumford procedure, possible rotator cuff repair and chondroplasty of glenohumeral joint, in other words, a shoulder replacement. (ECF No. 52-2 at PageID.465–67.)

Rogers submitted a Corizon Form 407 requesting surgery by Dr. Ganzhorn at WMH, which was approved on February 18, 2015. A few days later, however, Defendant Dr. Papendick, who reviews and authorizes surgery requests for Corizon, notified Rogers that the surgery could not occur at WMH. (ECF No. 58-1 at PageID.1219.) At the time, Corizon's policy was that a surgery that required an overnight stay in a hospital could only be performed in a hospital with a secure unit, and no hospital in Michigan's Upper Peninsula, including WMH, had a secure unit. (ECF No. 52-4 at PageID.694–95; ECF No. 52-5 at PageID.764.) A surgery requiring an

2

overnight stay would have to be performed at one of two secure hospitals—Henry Ford Allegiance Hospital in Jackson or McLaren Lansing.  (*Id.* at PageID.764.)  This policy was driven by security concerns.  (*Id.* at PageID.764.)  As Defendant Rogers explained in her deposition, if Dr. Ganzhorn had recommended only an arthroscopy, the procedure would have been outpatient and could have been performed at WMH.  But because Dr. Ganzhorn's recommendation was more extensive and would have required an overnight stay, WMH was not a suitable location.  (ECF No. 52-4 at PageID.707–08.)

A request for a surgical consult was submitted for McLaren Lansing.  Dr. Papendick approved the request on February 25, 2015.  (ECF No. 58-1 at PageID.1226.)  However, the scheduler was never able to arrange an appointment for Plaintiff with an orthopedic surgeon at McLaren Lansing.  (ECF No. 52-4 at PageID.709–10; ECF No. 58–1 at PageID.1245.)  On May 11, 2015, Plaintiff was seen by Dr. Boyce, an orthopedic surgeon at the Great Lakes Orthopedic Center in Traverse City.  After referring Plaintiff for some additional testing, Dr. Boyce also recommended surgery.  However, because McLaren's Traverse City hospital was not a secure facility, Dr. Boyce could not perform the surgery.  (ECF No. 52-4 at 718–19; ECF No. 58-1 at PageID.1239–40.)

Although Plaintiff never received an appointment at McLaren Lansing, Dr. Papendick's approval for Plaintiff to have a surgical consult at McLaren Lansing remained valid and was never cancelled.  (*Id.* at PageID.1248.)  During this time, Plaintiff continued to kite requests to have the surgery scheduled.  Rogers told Plaintiff during his examinations that she would try to resubmit the request.  (ECF No. 52-1 at PageID.417.)  Rogers last saw Plaintiff on July 27, 2016, to review his chronic issues, including his right shoulder pain.  Rogers noted, "[w]ill order x-ray

3

and see on f/u re: x-ray results and rt shoulder. Reports exercises from shoulder book [Plaintiff had purchased] have helped a bit w/ rt shoulder." (ECF No. 52-2 at PageID.470.)

Plaintiff filed a Step I grievance on February 19, 2016, regarding the MDOC's failure to approve him for shoulder surgery, claiming that Rogers had told him on February 3, 2016, that her request to authorize the surgery had been denied. (ECF No. 52-6 at PageID.920.) The Step I reviewer, Wendy Ball, R.N., denied the grievance because on February 3, 2016, "[t]he medical provider evaluated the patient's right shoulder and reviewed the recent test results of the MRI and EMG" and informed Plaintiff that the medical evidence showed that he did "not meet criteria at this time for shoulder surgery." (*Id.* at PageID.921.) Plaintiff was instructed to continue with physical therapy exercises. Plaintiff's appeal was denied at Step II and rejected as untimely at Step III. (*Id.* at PageID.917–19.)

In August 2016, Dr. Papendick notified Rogers that Plaintiff would be permitted to have the surgery at WMH. (ECF No. 52-2 at PageID.471; ECF No. 52-4 at PageID.724.) Rogers put in a note to schedule an appointment for Plaintiff regarding a referral back to Dr. Ganzhorn. (ECF No. 52-2 at PageID.472.) The appointment was never scheduled, however, because Plaintiff was transferred to another facility.[1] (ECF No. 52-4 at PageID.725–26; ECF No. 58-1 at PageID.1235.) Rogers had no further contact with Plaintiff.

Plaintiff was transferred from KCF to the Earnest C. Brooks facility in Muskegon. While he was there, he was seen for swelling in his knee. Dr. Daniel Fett eventually performed an

---

[1] On April 13, 2020, the Court granted Plaintiff's motion to depose schedulers Jody Krause and Sharolyn Stevens. (ECF No. 49.) Plaintiff's counsel in fact deposed those witnesses. While Plaintiff attaches a copy of Ms. Krause's deposition transcript to his supplemental brief, the deposition that purports to be that of Ms. Stevens is actually a transcript of the deposition of witness Marianne McKissick, P.A., in an Eastern District of Michigan case captioned *Kensu v. Borgerding*, No. 4:16-cv13505. (ECF No. 58-2.)

4

outpatient surgery on Plaintiff's knee.  (ECF No. 52-1 at PageID.421.)  Between September 2016 and March 2017, when Plaintiff had his surgery, he was primarily focused on his knee due to the swelling.  (*Id.* at PageID.421–22.)  At some point, Plaintiff was transferred to Muskegon Correctional Facility.  In June 2018, Plaintiff sent a kite for medical care regarding his shoulder and saw Barbara Hoover P.A.  Hoover sent Plaintiff for an evaluation by Dr. Fett, who ordered an MRI and an EMG.  (*Id.* at 423–24; ECF No. 52-2 at PageID.477.)  Plaintiff was transferred to Macomb Correctional Facility shortly before he was to return to see Dr. Fett.  Sixty days after the transfer, in March 2019, Plaintiff was paroled.  (*Id.* at PageID.424.)  Plaintiff had the shoulder replacement surgery following his release.

## II.  Motion Standard

The Corizon Defendants move for judgment on the pleadings pursuant to Rule 12(c) and, alternatively, for summary judgment pursuant to Rule 56(a).  Defendants Blessman and McIntyre move for summary judgment pursuant to Rule 56(a).  Because Corizon presents a request for relief under two separate rules, the Court must determine the appropriate standard to apply to its motion.  Rule 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  In addition, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Because the Corizon Defendants have submitted Plaintiff's deposition in support of their motion, and Plaintiff has responded with evidence of his own and was also permitted to depose additional witnesses and submit those transcripts in support of his response, the undersigned recommends that the Court exercise its discretion to consider matters outside the

5

pleadings and treat the Corizon Defendants' motion as brought under Rule 56(a). *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010).

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

#### A.  Statute of Limitations

All Defendants argue that they are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. They contend that, because Plaintiff admits in his complaint that he learned in February 2016 that Dr. Papendick denied his request for surgery in July 2015, and Plaintiff had completed the required exhaustion process by June 16, 2016, Plaintiff was required to file this action within three years of that date—June 16, 2019. Defendants argue that, because Plaintiff did not file his complaint until July 3, 2019, his claims are untimely. Plaintiff responds that, at a minimum, a question of material fact remains as to when the limitations period began to run because discovery has shown—and the Corizon Defendants assert—that Dr. Papendick never denied Plaintiff's request for surgery and, in fact, the Corizon Defendants were still trying to schedule Plaintiff's surgery. Plaintiff also argues that, because two specialists

6

recommended that Plaintiff needed shoulder replacement surgery, and his request for surgery had not been denied, the "continuing violation" doctrine applies to render his claims timely.

"[U]nder § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action. 'A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (internal citation omitted) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). "Stated differently, '[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

In a prior Report and Recommendation issued on February 3, 2020 (ECF No. 33), and adopted on March 23, 2020 (ECF No. 47), the undersigned recommended that Plaintiff's claims against Defendants Stieve and Borgerding be dismissed as time-barred because Plaintiff admitted in his complaint that in February 2016 Defendant Rogers notified Plaintiff that his request for shoulder surgery had been denied in July of 2015. (ECF No. 33 at PageID.146, 148–49.) Based on this admission, the undersigned concluded that Plaintiff had reason to know of his injury no later than February 2016. I further concluded that the continuing violations doctrine did not apply because the denial of Plaintiff's request was a discrete act. (*Id.* at PageID.150.)

Discovery has shown that Plaintiff's belief or understanding, as set forth in his complaint, was incorrect. That is, Plaintiff's request for shoulder surgery was never denied. As set forth above, Rogers submitted her initial request for authorization for Dr. Ganzhorn to perform the surgery at WMH, but she withdrew it after Dr. Papendick informed her that because the surgery would require an overnight stay, the surgery had to be performed in a secure hospital facility—

7

McLaren Lansing.  (ECF No. 52-4 at PageID.708; ECF No. 58-1 at PageID.1223.)  The evidence also shows that, shortly after Rogers withdrew her request for authorization for Dr. Ganzhorn to perform the surgery, she submitted a request for Plaintiff to be seen at McLaren Lansing, which Dr. Papendick approved on February 25, 2015.  While the scheduler, Jody Krause, was never able to arrange an appointment for Plaintiff at McLaren Lansing, the approval was never withdrawn.  In addition, although it is not clear how he got the appointment, Plaintiff was seen by Dr. Boyce in Traverse City later in 2015, and it appears that Dr. Boyce would have been approved to perform the surgery, but for the fact that McLaren in Traverse City was not a secure facility.  Finally, although Plaintiff's grievance was denied because the grievance reviewer determined that Plaintiff did not meet the criteria for shoulder surgery, that response was at odds with the information in Plaintiff's record showing Dr. Ganzhorn had recommended surgery and that Plaintiff had been approved for a surgical consult at McLaren Lansing.

Plaintiff's factual allegation in his complaint that Defendant Rogers told him in 2016 that his request for surgery had been denied in 2015 is generally considered a conclusively binding judicial admission.  *See Kay v. Minacs Grp. (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) (noting that "[f]actual assertions in pleadings . . ., unless amended, are considered judicial admissions conclusively binding on the party who made them" (citation omitted)).  However, "the trial court has 'broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.'"  *Goldman & Assocs., P.C. v. Kattouah* (*In re Kattouah*), 452 B.R. 604, 608 (E.D. Mich. 2011) (quoting *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997)). "For example, the court may relieve a party from its admission if it was the result of inadvertence or mistake."  *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Arioli*, 941 F. Supp. 646, 655 (E.D. Mich. 1996)).  Here, it is quite clear that Plaintiff's allegation that Dr. Papendick denied

8

Plaintiff's request for surgery in 2015 was inaccurate, as Rogers and Dr. Papendick, as well as scheduler Krause, have confirmed that Plaintiff was approved for a surgical consult at McLaren Lansing in February 2015. Accordingly, this evidence, which is undisputed, provides an appropriate basis to relieve Plaintiff of his admission because of mistake. Once relieved of his admission, Plaintiff's evidence suffices to create an issue of fact as to when his cause of action accrued. A reasonable jury could conclude that, as surgery had never been foreclosed, but only delayed due to the inability to find a surgeon at a secure facility to perform the surgery, Plaintiff's claim accrued as late as March 2019, when he was paroled from the MDOC, or at some point before his release within the statute of limitations.

### B. Deliberate Indifference—Defendant Rogers

The Corizon Defendants argue that Defendant Rogers is entitled to summary judgment because Plaintiff fails to show that she was deliberately indifferent to his serious medical need. The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001).

Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment

9

is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need.  *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.  In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).  To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

The Corizon Defendants argue that Plaintiff fails to establish either prong of the analysis.  As to the objective prong, Defendants note that because Rogers provided Plaintiff some treatment for his shoulder, he must present expert medical testimony to establish the detrimental effect of the inadequate treatment or the detrimental effect of the delay, and he has failed to do so.  (ECF

10

No. 41 at PageID.225.)   Defendants further argue that, regardless of whether Plaintiff satisfies the objective prong of his claim, he cannot establish the subjective component because Rogers treated Plaintiff's shoulder and attempted to schedule him for surgery.

Plaintiff counters that he has established both prongs of his claim.   First, Plaintiff contends that, because he was diagnosed by several surgeons as needing a complete shoulder replacement, and both Rogers and Dr. Papendick agreed that he needed surgery, he has sufficiently established the objective component of his claim.   Second, Plaintiff argues that Rogers was deliberately indifferent because she did not attempt to locate a secure facility, despite her obligation to do so and her promises to Plaintiff that she was attempting to get the surgery scheduled and approved. (ECF No. 52 at PageID.389.)

Plaintiff has presented sufficient evidence to show that his shoulder condition was objectively serious for purposes of an Eighth Amendment claim.   The Sixth Circuit has held that a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)).   Here, it is undisputed that Drs. Ganzhorn and Boyce opined that Plaintiff required shoulder surgery.[2]

Plaintiff's claim fails on the subjective component.   The evidence shows that Defendant Rogers was not deliberately indifferent to Plaintiff's need for shoulder surgery.   As noted above, after ordering x-rays and an MRI of Plaintiff's shoulder, and after referring Plaintiff for physical

---

[2] It appears that the doctors' surgical approaches differed.   Dr. Ganzhorn recommended a right shoulder arthroscopy with additional, more invasive procedures (a total shoulder replacement) if necessary.   Dr. Boyce, on the other hand, recommended performing an arthroscopy before performing a shoulder replacement because of Plaintiff's younger age (under 40 years old).   (ECF No. 52-2 at PageID.466, 468.)

11

therapy, Defendant Rogers obtained an appointment for Plaintiff with Dr. Ganzhorn, who recommended that Plaintiff undergo an extensive surgery. Rogers thereafter submitted a Form 407 seeking approval for Dr. Ganzhorn to perform the surgery. She withdrew the request a few days later after Dr. Papendick notified her that Dr. Ganzhorn could not perform the surgery at WMH because his surgical plan likely would have been inpatient, and WMH did not have a secure unit. Thereafter, Rogers submitted a request for a surgical consult at McLaren Lansing—one of the two hospital facilities in the state with a secure unit—and Dr. Papendick approved the request on February 25, 2015. Ultimately, Plaintiff was unable to obtain an appointment with an orthopedic surgeon at McLaren Lansing. In August 2016, however, when Dr. Papendick notified Rogers that Plaintiff could now be scheduled for surgery with Dr. Ganzhorn at WMH, Rogers submitted an appointment request to see Plaintiff in order initiate the referral to Dr. Ganzhorn. She was never able to follow through on her plan because—due to circumstances beyond her control—Plaintiff was transferred before she could see him. (ECF No. 52-4 at PageID.725–27.) All of this demonstrates that Rogers did not ignore Plaintiff's need for shoulder surgery and that, but for Plaintiff's fortuitous transfer, he would have eventually had the surgery.

Plaintiff's argument that Rogers should have done more by attempting to locate both a secure facility and an orthopedic surgeon to perform Plaintiff's inpatient procedure is, at most, a claim that Rogers was negligent, which falls short of the deliberate indifference standard. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) ("Deliberate indifference is not mere negligence"). Moreover, the fact that Dr. Papendick contacted Rogers in August 2016 suggests that Rogers had, in fact, been in contact with Dr. Papendick about Plaintiff's surgery. Plaintiff's arguments in his supplemental brief fail as well. Plaintiff asserts that Rogers was deliberately indifferent for not following through with the transferee facility to ensure that Plaintiff

12

would receive the surgery. But Rogers testified that she is not involved with transfer of patient records when a prisoner transfers to a new facility and that "[t]he nursing staff handles all of that." (*Id.* at PageID.700–01.) Thus, Rogers was entitled to rely on others to handle this function, and the fact that she did not "follow through" is not deliberate indifference. Next, Plaintiff argues that Rogers was deliberately indifferent because she insisted that Plaintiff needed to have the surgery in a secure unit, yet scheduled Plaintiff with doctors who could not perform the surgery at a secure unit and did not even know which facilities were in fact secured. Contrary to Plaintiff's assertion, this evidence undermines a claim of deliberate indifference because Rogers was attempting to get Plaintiff medical treatment, even if her efforts were not perfect.

### C.  Deliberate Indifference—Defendant Papendick

Because the Corizon Defendants did not argue in their motion that Dr. Papendick was not deliberately indifferent, the Court ordinarily would not address the issue. However, the Court will address the issue because Plaintiff raised it in his supplemental brief (ECF No. 58 at PageID.1199–1201), and the Corizon Defendants responded to it (ECF No. 59 at PageID.1283–84).

Plaintiff fails to show that Dr. Papendick—the only other Defendant in this case who was involved in Plaintiff's treatment decisions—was deliberately indifferent. While Dr. Papendick advised Rogers that he could not approve Dr. Ganzhorn to perform the surgery at WMH, he told Rogers that Plaintiff would need to be seen at McLaren Lansing and subsequently approved her request for a surgical consult there. Nothing in the record shows that Dr. Papendick denied any subsequent requests for Plaintiff's shoulder surgery. In fact, in August 2016, he advised Rogers that the surgery would be permitted at WMH, even though it did not have a secure unit.

Plaintiff argues that a reasonable jury could find that Dr. Papendick was deliberately indifferent based on the testimony of scheduler Krause, who stated that WMH in fact had a secure

13

unit in which Dr. Ganzhorn could have performed the surgery. The undersigned notes that most of Krause's testimony regarding the events in this case was based on her interpretation of Rogers's notes, and there is no evidence that she spoke with either Rogers or Dr. Papendick about why surgery was not permitted at WMH. In fact, she confirmed that she had "no idea" why Plaintiff was not authorized for inpatient surgery with Dr. Ganzhorn but speculated that it was not for safety reasons. (ECF No. 58-1 at PageID.1257–58.) But even accepting Krause's testimony at face value, it does not show that Dr. Papendick was deliberately indifferent. Perhaps Krause knew more than Dr. Papendick, and he was merely mistaken about WMH not having a secure facility. Regardless, Krause's testimony shows no more than that Dr. Papendick was negligent because he was unaware that WMH had a secure unit.

Plaintiff includes allegations in his complaint about not receiving surgery during the remainder of his incarceration with MDOC, after he was transferred from KCF, but he presents no evidence showing that Dr. Papendick made any decision during that time denying Plaintiff treatment for his shoulder. Plaintiff admitted that, between September 2016 and March 2017, he was primarily focused on his knee, for which he had surgery. (ECF No. 52-1 at PageID.421–22.) When Plaintiff eventually sought treatment for his shoulder again in June 2018, he was referred to Dr. Fett, who ordered testing and would have followed up with Plaintiff, but for Plaintiff's transfer to Macomb Correctional Facility and eventual parole. Thus, Plaintiff's failure to obtain shoulder surgery while incarcerated resulted, not from deliberate indifference by any Corizon employee, but from circumstances over which Dr. Papendick and Corizon had no control.

### D. Supervisory Liability—Defendants Lacy and Bomber

The Corizon Defendants did not cite a separate ground for summary judgment specific to Defendants Lacy and Bomber. However, the record discloses that they were not actively involved in making treatment decisions regarding Plaintiff, and Plaintiff's allegations against them are

14

limited to claims of supervisory liability. (ECF No. 1 at PageID.13–16.) Because neither Rogers nor Dr. Papendick violated Plaintiff's Eighth Amendment rights, Plaintiff's supervisory liability claims must fail as well. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (noting that "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor"). Moreover, Plaintiff's argument that Dr. Bomber, as a grievance reviewer, can be liable under Section 1983 for failing to take action to ensure that Plaintiff received surgery is incorrect. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (noting that "[t]he denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983") (internal quotation marks omitted). According, Plaintiff's claims against Defendants Lacy and Bomber should be dismissed.

### E.     *Monell* **Liability—Corizon**

The Corizon Defendants also argue that Plaintiff's *Monell* claim must be dismissed because Plaintiff fails to show that Corizon had a policy or practice that was the moving force behind a violation of Plaintiff's constitutional rights. This claim is subject to dismissal for the same reason as the supervisory liability claims. To establish a *Monell* liability claim, a plaintiff must first show that he was harmed by a constitutional violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Because Plaintiff fails to show a constitutional violation, Corizon cannot be liable under *Monell*. *See Watkins*, 273 F.3d at 687 ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

### F.     **Supervisory Liability—Defendants Blessman and McIntyre**

Defendants Blessman and McIntyre, whom Plaintiff sues under a supervisory liability theory, move for summary judgment arguing that Plaintiff has no evidence that they violated Plaintiff's constitutional rights. In his response, Plaintiff conceded that Defendant Blessman is

15

entitled to summary judgment. (ECF No. 57 at PageID.1082.) For the reasons set forth above regarding the claims against Defendants Bomber and Lacy, Defendant McIntyre is also entitled to summary judgment.

### IV. Conclusion

For the reasons set forth above, I recommend that the Court grant Defendants' motions for summary judgment (ECF Nos. 41 and 42) and dismiss Plaintiff's complaint with prejudice.

### **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: July 31, 2020 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge